1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   KENNETH LEE TAYLOR,                    No.  2:21-cv-1042 TLN DB P

11                  Plaintiff,

12          v.                              FINDINGS AND RECOMMENDATIONS

13   MARSHA INGRAM, et al.,

14                  Defendants.

15

16          Plaintiff, a state prisoner proceeding pro se, has filed a civil rights action pursuant to 42

17   U.S.C. § 1983.  Plaintiff claims that defendant retaliated against him in violation of his First

18   Amendment rights when she (1) wrote a false disciplinary report against him on August 4, 2019,

19   and (2) moved his housing assignment on August 8, 2019, after plaintiff told her that he intended

20   to submit a staff complaint against her.  Presently before the court is defendant's fully briefed

21   motion for partial summary judgment arguing she is entitled to summary judgment on plaintiff's

22   claim that defendant retaliated against him by changing his housing assignment because plaintiff

23   failed to exhaust administrative remedies as to this claim. [1]  For the reasons set forth below, the

24   undersigned will recommend that the motion be denied because administrative remedies were

25   effectively unavailable.

26   ////

27   ───────────────────────

28   [1] Defendant's motion states that plaintiff exhausted his claim that defendant retaliated by
     authoring a disciplinary report against him.

                                           1

1

**BACKGROUND**

2

**I.      Relevant Procedural History**

3          Plaintiff initiated this action with the filing of the complaint on June 9, 2021.[2]  (ECF No. 1

4    at 8.)  By order dated April 4, 2022, the undersigned screened the complaint and determined that

5    the complaint stated cognizable retaliation claims against defendant Ingram based on plaintiff's

6    allegations that defendant (1) filed a false rules violation report ("RVR") and (2) had plaintiff

7    transferred to another housing unit because plaintiff informed her that he intended to file a staff

8    complaint against her.  (ECF No. 7.)  Plaintiff was given the option to proceed immediately with

9    his retaliation claims against defendant Ingram or file an amended complaint.  (Id.)  Plaintiff

10   elected to proceed immediately, voluntarily dismissing all other claims and defendants.  (ECF No.

11   10.)

12         Defendant was served (ECF No. 15), and this action was referred to the court's Post-

13   Screening ADR (Alternative Dispute Resolution) Project (ECF No. 18).  Defendant moved to opt

14   out of the Post-Screening ADR Project.  (ECF No. 22.)  The motion was granted, and defendant

15   was directed to file an answer.  (ECF No. 23.)  The answer was filed on October 14, 2022.  (ECF

16   No. 24.)  A discovery and scheduling order was issued on November 28, 2022.  (ECF No. 25.)

17   Defendant filed the instant motion for partial summary judgment on January 30, 2023.  (ECF No.

18   26.)  Plaintiff moved for and was granted a forty-five-day extension of time to file an opposition.

19   (ECF Nos. 27, 29.)

20         Defendant filed a motion to compel plaintiff to respond to discovery requests.  (ECF No.

21   30.)  Plaintiff requested the appointment of counsel and moved to reopen discovery.  (ECF No.

22   34.)  The undersigned denied the motion without prejudice and directed plaintiff to file an

23   opposition or statement of no opposition to defendant's motion to compel[3] within thirty days and

24   _____

25   [2] Under the prison mailbox rule, a document is deemed served or filed on the date a prisoner signs
     the document and gives it to prison officials for mailing.  See Houston v. Lack, 487 U.S. 266, 276
26   (1988) (establishing the prison mailbox rule); Campbell v. Henry, 614 F.3d 105, 1059 (9th Cir.
     2010) (applying the mailbox rule to both state and federal filings by incarcerated inmates).

27

28   [3] The undersigned notes that plaintiff has not filed an opposition or statement of no opposition to
     the motion to compel. That motion remains pending.

2

to file an opposition to defendant's motion for summary judgment within sixty days.  (ECF No. 36.)

In response, plaintiff moved for a ninety-day extension of time.  (ECF No. 39.)  The motion was granted in part and denied in part.  Plaintiff was directed to respond to the motion to compel by June 30, 2023, and to the motion for summary judgment by July 31, 2023.  (ECF No. 40.)  The pretrial motion deadline set forth in the discovery and scheduling order was vacated.  (Id.)  The undersigned ordered that pretrial motions were to be filed no later than sixty days after a final ruling on the instant exhaustion-based summary judgment motion.  (Id.)

## II.    Allegations in the Complaint

Plaintiff alleges that the events giving rise to the claim occurred while he was a California Department of Corrections and Rehabilitation ("CDCR") inmate housed at California Health Care Facility, Stockton ("CHCF").  (ECF No. 1 at 5.)  Correctional Officer Marsha Ingram is the sole[4] defendant.  (Id. at 2.)

Plaintiff alleges that on August 4, 2019, he made several requests for defendant to mail his outgoing legal mail.  (Id. at 4.)  Defendant denied the requests and eventually "started yelling emotionally at him out of control with extreme vulgarity."  (Id.)  When defendant informed plaintiff that she would not assist with plaintiff's mail, plaintiff informed her that he intended to "write a complaint against her" for her refusal.  (Id. at 5.)  In response, defendant threated "to move plaintiff out of her housing unit."  (Id.)  Correctional Officer C. Dubuisson intervened and ordered plaintiff back to his cell, later telling plaintiff that "you can never win an argument with the defendant (c/o Marsha Ingram) because of what she'll write on paper."  (Id.)

Defendant wrote plaintiff up for a "false and fabricated" rules violation based on this interaction.  (Id. at 6.)  Defendant also moved plaintiff from his "Honor Housing Unit Dormitory" to a housing unit with a water supply contaminated with Legionnaire's Disease.  (Id. at 6.)  As a

---

[4] Plaintiff identified Correctional Sergeant R. Valencia as a defendant in the complaint.  Upon screening, the undersigned determined that the allegations were not sufficient to state a claim against Valencia.  (ECF No. 7 at 6-7.)  Plaintiff was given the option to amend the complaint or proceed immediately on his claims against defendant Ingram.  (Id. at 9.)  Plaintiff elected to proceed immediately voluntarily dismissing all other claims and defendants.  (ECF No. 10.)  Accordingly, defendant Ingram is the sole remaining defendant.

1  result of being placed in the new housing unit, plaintiff "contracted and suffered 'skin rashes all

2  over his body that's permanent to this date.'"  (<u>Id.</u> at 7.)

3      Plaintiff alleges he suffered injury in the form of damage to his disciplinary history that

4  impacted his parole hearing, medical consequences, emotional distress, and more.  (<u>Id.</u> at 4.)

5  Plaintiff requests relief in the form of a "chrono" stating the August 4, 2019, rules violation report

6  written by defendant was without merit and monetary damages in an unstated amount.  (<u>Id.</u> at 8.)

7                            **MOTION FOR SUMMARY JUDGMENT**

8    **I.      The Parties' Briefs**

9          **A.  Defendant's Motion**

10      Defendant argues that she is entitled to summary judgment on one of plaintiff's retaliation

11  claims.  (ECF No. 26.)  Upon screening the complaint, the undersigned determined that plaintiff

12  alleged potentially cognizable retaliation claims based upon defendant Ingram (1) filing a "false

13  and fabricated" rules violation report and (2) transferring him from the Honor Housing Unit

14  Dormitory to another bed in the facility where he was exposed to Legionnaires Disease.  (ECF

15  No. 7 at 6.)  In the motion for partial summary judgment, defendant argues that plaintiff failed to

16  his exhaust his claim that defendant changed his housing assignment in retaliation.

17      Specifically, defendant argues that plaintiff filed a grievance regarding the retaliatory bed

18  move, but it was cancelled as untimely, and a cancelled grievance does not exhaust administrative

19  remedies.  (ECF No. 26 at 5-7, 10-11.)

20          **B.  Plaintiff's Opposition**

21      In his opposition, plaintiff alleges that the events giving rise to the claim stem from an

22  incident that occurred on August 4, 2019.  (ECF No. 42 at 1-3.)  Plaintiff states that on that date,

23  defendant Ingram refused to process his legal mail after plaintiff advised her that he was going to

24  file a staff complaint against her, defendant threatened to move plaintiff out of his housing unit

25  and wrote a false rules violation report.  (<u>Id.</u> at 2.)  He further states that on August 8, 2019,

26  defendant moved plaintiff's housing assignment, as she threatened to do on August 4, 2019.  (<u>Id.</u>)

27  Plaintiff filed a grievance challenging all of defendant's actions.  (<u>Id.</u>)  He claims the grievance

28  was improperly screened out because all three issues stemmed from a single event.  (<u>Id.</u>)  He

1  further argues that the rejection made it impossible for him to file both appeals within the time

2  limits.  (<u>Id.</u>)

3          **C.  Defendant's Reply**

4          Defendant again argues that plaintiff failed to exhaust his retaliatory bed move claim

5  because the appeal was properly cancelled as untimely.  (ECF No. 44.)  Defendant further argues

6  that plaintiff's initial grievance, where plaintiff included all of his allegations against defendant,

7  did not seek a remedy or request an investigation into the retaliatory bed move.  (<u>Id.</u> at 3-4.)

8  Defendant claims that plaintiff did not exhaust because the rejected grievance failed to put the

9  prison on notice of plaintiff's claim that defendant took adverse action against him.  Specifically,

10 defendant argues the change in plaintiff's housing assignment was not timely filed as the

11 grievance solely related to the retaliatory bed move.  (<u>Id.</u> at 6.)

12     **II.     Summary Judgment under Rule 56**

13         Summary judgment is appropriate when the moving party "shows that there is no genuine

14 dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

15 Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party bears the burden of

16 proving the absence of a genuine issue of material fact."  <u>In re Oracle Corp. Sec. Litig.</u>, 627 F.3d

17 376, 387 (9th Cir. 2010) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).  The moving

18 party may accomplish this by "citing to particular parts of materials in the record, including

19 depositions, documents, electronically stored information, affidavits or declarations, stipulations

20 (including those made for purposes of the motion only), admissions, interrogatory answers, or

21 other materials" or by showing that such materials "do not establish the absence or presence of a

22 genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

23 Fed. R. Civ. P. 56(c)(1).

24         "Where the non-moving party bears the burden of proof at trial, the moving party need

25 only prove there is an absence of evidence to support the non-moving party's case."  <u>Oracle</u>

26 <u>Corp.</u>, 627 F.3d at 387 (citing <u>Celotex</u>, 477 U.S. at 325); <u>see also</u> Fed. R. Civ. P. 56(c)(1)(B).

27 Indeed, summary judgment should be entered, "after adequate time for discovery and upon

28 motion, against a party who fails to make a showing sufficient to establish the existence of an

                                                5

1   element essential to that party's case, and on which that party will bear the burden of proof at

2   trial." <u>Celotex</u>, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element

3   of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> at 323.  In such

4   a circumstance, summary judgment should "be granted so long as whatever is before the district

5   court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

6   56(c), is satisfied." <u>Id.</u>

7          If the moving party meets its initial responsibility, the burden shifts to the opposing party

8   to establish that a genuine issue as to any material fact actually does exist.  <u>Matsushita Elec.</u>

9   <u>Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).  In attempting to establish the

10  existence of this factual dispute, the opposing party may not rely upon the allegations or denials

11  of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

12  admissible discovery material, in support of its contention that the dispute exists.  <u>See</u> Fed. R.

13  Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a

14  fact "that might affect the outcome of the suit under the governing law," <u>Anderson v. Liberty</u>

15  <u>Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809

16  F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a

17  reasonable jury could return a verdict for the nonmoving party," <u>Anderson</u>, 477 U.S. at 248.

18         "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

19  court] draw[s] all inferences supported by the evidence in favor of the non-moving party." <u>Walls</u>

20  <u>v. Cent. Costa Cnty. Transit Auth.</u>, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam) (citation

21  omitted).  It is the opposing party's obligation to produce a factual predicate from which the

22  inference may be drawn.  <u>See</u> <u>Richards v. Nielsen Freight Lines</u>, 810 F.2d 898, 902 (9th Cir.

23  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

24  show that there is some metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586

25  (citations omitted).  "Where the record is taken as a whole could not lead a rational trier of fact to

26  find for the non-moving party, there is no 'genuine issue for trial.'" <u>Id.</u> at 587 (quoting <u>First Nat'l</u>

27  <u>Bank</u>, 391 U.S. at 289).

28  ////

1      On a motion for summary judgment, it is inappropriate for the court to weigh evidence or

2  resolve competing inferences.  "In ruling on a motion for summary judgment, the court must

3  leave '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate

4  inferences from the facts to the jury."  Foster v. Metropolitan Life Ins. Co., 243 Fed.Appx. 208,

5  210 (9th Cir. 2007) (quoting Anderson, 477 U.S. at 255).

6      Generally, when a defendant moves for summary judgment on an affirmative defense on

7  which he bears the burden of proof at trial, he must come forward with evidence which would

8  entitle him to a directed verdict if the evidence went uncontroverted at trial.  See Houghton v.

9  South, 965 F.2d 1532, 1536 (9th Cir. 1992).  The failure to exhaust administrative remedies is an

10  affirmative defense that must be raised in a motion for summary judgment rather than a motion to

11  dismiss.  See Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc).  On a motion for

12  summary judgment for non-exhaustion, the defendant has the initial burden to prove "that there

13  was an available administrative remedy, and that the prisoner did not exhaust that available

14  remedy."  Id. at 1172.  If the defendant carries that burden, the "burden shifts to the prisoner to

15  come forward with evidence showing that there is something in his particular case that made the

16  existing and generally available administrative remedies effectively unavailable to him."  Id.  The

17  ultimate burden of proof remains with the defendant, however.  Id.  If material facts are disputed,

18  summary judgment should be denied, and the "judge rather than a jury should determine the

19  facts" on the exhaustion question, id. at 1166, "in the same manner a judge rather than a jury

20  decides disputed factual questions relevant to jurisdiction and venue," id. at 1170-71.

21  **III.**    **Exhaustion**

22      **A. Legal Standards or Exhaustion of Administrative Remedies**

23      **1.  PLRA Exhaustion Requirement**

24      Because plaintiff is a prisoner challenging the conditions of his confinement, his claims

25  are subject to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  The PLRA

26  mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 .

27  . . or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility

28  until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The

1    exhaust requirement "applies to all inmate suits about prison life, whether they involve general

2    circumstances or particular episodes, and whether they allege excessive force or some other

3    wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

4           Regardless of the relief sought, a prisoner must purse an appeal through all levels of a

5    prison's grievance process as long as some remedy remains available. "The obligation to exhaust

6    'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer

7    the case, then there are no 'remedies . . . available,' and the prison need not further pursue the

8    grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis and alteration in

9    original) (citing Booth v. Churner, 532 U.S. 731, 736 (2001)).

10          "Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of

11   administrative remedies: An inmate . . . must exhaust available remedies, but need not exhaust

12   unavailable ones." Ross v. Blake, 578 U.S. 632, 642 (2016) (brackets in original). In discussing

13   availability in Ross the Supreme Court identified three circumstances in which administrative

14   remedies were unavailable: (1) where an administrative remedy "operates as a simple dead end"

15   in which officers are "unable or consistently unwilling to provide any relief to aggrieved

16   inmates;" (2) where an administrative scheme is "incapable of use" because "no ordinary prisoner

17   can discern or navigate it;" and (3) where "prison administrators thwart inmates from taking

18   advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at

19   643-44. "[A]side from [the unavailability] exception, the PLRA's text suggests no limits on an

20   inmate's obligation to exhaust—irrespective of any 'special circumstances.'" Id. at 639.

21   "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes,

22   foreclosing judicial discretion." Id.

23          "[F]ailure to exhaust is an affirmative defense under the PLRA." Jones v. Bock, 549 U.S.

24   199, 216 (2007). It is the defendant's burden "to prove that there was an available administrative

25   remedy." Albino, 747 F.3d at 1172 (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th

26   Cir. 1996)). The burden then "shifts to the prisoner to come forward with evidence showing that

27   there is something in his particular case that made the existing and generally available

28   administrative remedies unavailable to him." Id.

A prisoner is required to exhaust administrative remedies before filing suit.  McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam).  Section 1997e(a) mandates that "[n]o action shall be brought . . . until [the prisoner's] administrative remedies . . . are exhausted.  42 U.S.C. § 1997e(a).  "The 'available' remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained."  Booth, 532 U.S. at 738.  "Exhaustion subsequent to the filing of suit will not suffice."  McKinney, 311 F.3d at 1199.

### 2.  California's Inmate Appeal Process

"The California prison system's requirements 'define the boundaries of proper exhaustion."  Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) (quoting Jones, 549 U.S. at 218).  California prisoner may appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate a material adverse effect upon his or her health, safety, or welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  During the time relevant to this action,[5] inmates in California proceeded through three levels of appeals to exhaust the appeal process: (1) formal written appeal on a CDC 602 inmate appeal form; (2) second level appeal to the institution head or designee; and (3) third level appeal to the Director of the California Department of Corrections and rehabilitation ("CDCR").  Cal. Code Regs. tit. 15, § 3084.7.  Under specific circumstances, the first level may be bypassed.  Id.  The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies.  See id., § 3084.7(d)(3).  However, a cancellation or rejection decision does not exhaust administrative remedies.  Id., § 3084.1(b).

A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to him.  Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennet v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).  In submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue."  Cal. Code Regs. tit. 15, § 3084.2(3).  Further, the inmate must "state all facts known

---

[5] In 2020, California changed the grievance system from a three-tier system to a two-tier system. The change became effective on June 1, 2020, after plaintiff initiated the relevant appeals in the present case.  See Cal. Code Regs. tit. 15, § 3480.  All citations to the California code in the text refer to the prior law.

and available to him/her regarding the issue being appealed at the time," and they must "describe the specific issue under appeal and the relief requested."  Id. § 3084.6(b)(8).

An inmate has thirty calendar days to submit their grievance from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed."  Cal. Code Regs. tit. 15, § 3084.8(b).

## IV.    Material Facts

Defendant filed a Statement of Undisputed Facts ("DSUF") as required by Local Rule 260(a).  (ECF No. 26-1.)  Plaintiff's opposition fails to comply with Local Rule 260(b).  Rule 260(b) requires that a party opposing a motion for summary judgment "reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial."

The court is mindful of the Ninth Circuit's instruction that district courts are to "construe liberally motion papers and pleadings filed by pro se inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules.  However, only those assertions in the opposition that have evidentiary support in the record will be considered.

In the opposition, plaintiff has not indicated any dispute regarding the appeals cited by defendant or the date on which the appeals were submitted.

### A.  Facts regarding Appeals Process and Rules

At the time plaintiff submitted the relevant grievances, institutional staff had 30 working days from the date they received an inmate grievance, to provide a first level response. (DSUF (ECF No. 26-1) at ¶ 4.)  If the grievance was denied or not resolved to the inmate's satisfaction at the first level, the inmate could appeal it to the second level within thirty calendar days.  (Id.) The time constraints are the same at the second level.  (Id.)

////

At the third level of review, the Chief of the Office of Appeals would issue a response. Once an inmate receives a third level decision, the grievance is exhausted. (DSUF (ECF No. 26-1) at ¶ 5.) A grievance may be rejected or cancelled if it fails to comply with the regulations governing inmate appeals. (DSUF (ECF No. 26-1) at ¶ 6.) A cancelled appeal does not exhaust administrative remedies. (DSUF (ECF No. 26-1) at ¶ 7.) If the inmate disagrees with the cancellation, he can challenge the cancellation by filing a new administrative grievance regarding that decision. (DSUF (ECF No. 26-1) at ¶ 8.) If the inmate prevails, the initial grievance will be reinstated. (Id.)

### B. Facts regarding Events and Timing

At all relevant times, plaintiff was incarcerated at CHCF. (DSUF (ECF No. 26-1) at ¶ 1.) Plaintiff's complaint alleges "that (1) on August 4, 2019, Defendant Ingram filed a false and fabricated CDCR-128-A against him, and (2) on August 8, 2019, Defendant Ingram moved his bed from his Honor Housing Unit Dormitory and Legionnaires' free bed to a bed in a unit that exposed him to Legionnaires disease; and, that Defendant Ingram took these actions in retaliation for [plaintiff's] threat to file a grievance against her in violation of his First Amendment Rights." (Id.)

Between August 4, 2019, the date on which the events giving rise to the claim commenced, and June 14, 2021, the date the complaint was filed on the docket, plaintiff filed three grievances related to the allegations in the complaint. (DSUF (ECF No. 26-1) at ¶ 2.) Those three grievances, and the facts relevant to them are:

### 1. Grievance No. CHCF-E-19-03565 ("3565")

This grievance was received by prison staff on August 26, 2019. (DSUF (ECF No. 26-1) at ¶ 9.) Therein, plaintiff alleged that defendant issued a false rules violation report in retaliation "(1) to taint [his] 10-year disciplinary-free history for [his] upcoming Jan. 2020 parole hearing to cause [him] irreparable harms to parole; (2) to deter and prevent [his] regular and numerous outgoing legal mailings because [he is] a known jailhouse lawyer who[] file[s] complaints and sues prison officials and C/Os with a successful record []; for [plaintiff] successfully defeating a 'false and fabricated CDCR-128 RVR' by her 2nd watch co-worker [c/o J. Green] on 7/30/2019,

1  Log No. CHCF-E-19-02690; and (4) as an alleged reason for 'refusing' to process [his] outgoing

2  legal mail during 3rd watch per prison policy." (De Jesus Decl. (ECF No. 26-2) at ¶ 10.)

3  Plaintiff also provided allegations describing the August 4 interaction with defendant.[6]  (Id.)

4          The grievance was screened out and rejected on September 3, 2019 "because it contained

5  multiple issues that did not derive from a single event, or that were not directly related and could

6  not have been reasonably addressed in a single event." (De Jesus Decl. (ECF No. 26-2) at ¶ 11.)

7  Plaintiff resubmitted the grievance, omitting allegations related to the August 8 bed move, on

8  September 17, 2019. (De Jesus Decl. (ECF No. 26-2) at ¶ 12.)  The appeal was bypassed at the

9  first level and denied at the second level. (De Jesus Decl. (ECF No. 26-2) at ¶¶ 13, 14.)   This

10  grievance, regarding plaintiff's claim that defendant retaliated by issuing plaintiff a false RVR on

11  August 4, 2019, was exhausted at the second level of review because it was classified as

12  administrative. (DSUF (ECF No. 26-1) at ¶ 9.)

13                  **2.   Grievance No. CHCF-E-19-04079 ("4079")**

14          This grievance was received on October 1, 2019. (DSUF (ECF No. 26-1) at ¶ 10.)

15  Therein, plaintiff alleged that he was moved to a "Legionnaires' Disease contaminated water

16  supply housing unit" in retaliation for informing defendant he would file a staff complaint against

17  her. (Id.)  Plaintiff also included allegations regarding defendant's actions on August 4, 2019, in

18  addition to the August 8, 2019, bed move allegations. (De Jesus Decl. (ECF No. 26-2) at ¶ 16.)

19  This grievance was screened out and rejected at the first level because it related to multiple issues.

20  (De Jesus Decl. (ECF No. 26-2) at ¶ 17.)  The rejection noted that plaintiff previously appealed

21  the August 4, 2019, incident and instructed that if he chose to rewrite an appeal involving the

22  August 8, 2019, bed move he should resubmit the grievance within 30 days. (Id.)

23          Plaintiff refiled the appeal relating to the August 8, 2019, bed move on October 7, 2019.

24  (De Jesus Decl. (ECF No. 26-2) at ¶ 18.)  The grievance was cancelled at the first level because

---

25  [6] The court notes that the original version of this grievance included a statement from plaintiff
26  that he was "move[d] from a 'Legionnaires' Disease [FREE] E2A-116 Low Water Supply
    Housing Unit,' to a 'Legionnaires' Disease Contaminated Water Supply Housing Unit E5A-104
27  Low" without notice. (ECF No. 26-2 at 38; ECF No. 42 at 8.) While this grievance was included
    in exhibits filed by both parties (see id.), it was not included in the description of this grievance
28  within defendant's statement of undisputed facts.

1   the time limits for submitting the appeal were exceeded.  (DSUF (ECF No. 26-1) at ¶ 15.)

2   Plaintiff was informed he could appeal the cancellation.  (DSUF (ECF No. 26-1) at ¶ 16.)

3                    **3.   Grievance No. CHCF-E-19-04044 ("4044")**

4         This grievance was submitted on October 22, 2019.  (DSUF (ECF No. 26-1) at ¶ 17.)

5   Therein, plaintiff challenged the cancellation of grievance 4079.  (Id.)  The appeal was rejected

6   on October 23, 2019, because it did not derive from a single event.  Plaintiff was directed to

7   resubmit the grievance within thirty days along with necessary supporting documents.  (De Jesus

8   Decl. (ECF No. 26-2) at ¶ 21.)

9         Plaintiff resubmitted the appeal with supporting documents on October 30, 2019.  (DSUF

10  (ECF No. 26-1) at ¶ 19.)  The grievance was accepted, and plaintiff was interviewed.  (DSUF

11  (ECF No. 26-1) at ¶ 20.)  On November 5, 2019, the grievance was denied at the second level.

12  (DSUF (ECF No. 26-1) at ¶ 21.)  The explanation provided stated that grievance 4079 was

13  properly cancelled for being untimely because the bed move occurred on August 8, 2019, and

14  grievance 4079 was submitted more than 30 days later, on October 1, 2019.  (Id.)

15        Plaintiff appealed the denial of grievance 4044 to the third level of review.  (DSUF (ECF

16  No. 26-1) at ¶ 22.)  The Office of Appeals adopted the second level's decision that the

17  cancellation of grievance 4079 as untimely was proper.  (DSUF (ECF No. 26-1) at 23.)

18                         **4.   Other Grievances**

19        Plaintiff filed one other grievance, log number CHCF-19-2923, prior to filing the original

20  complaint in this case.  (DSUF (ECF No. 26-1) at ¶ 24.)  However, the allegations contained

21  therein, do not relate to the events at issue in this case.  (Id.)  Records do not indicate that plaintiff

22  filed any other grievances during the relevant time period.  (DSUF (ECF No. 26-1) at ¶ 25.)

23  **V.      Analysis**

24        Defendant has put forth evidence showing that plaintiff filed three grievances regarding

25  his allegations in this action.  (ECF No. 26.)  Defendant states that plaintiff exhausted his claim

26  that defendant retaliated by filing a "false and fabricated" RVR, but failed to exhaust his claim

27  that defendant moved plaintiff's housing assignment from honor dorm housing to a housing unit

28  where the water supply was infected with Legionnaires disease.

1    Plaintiff does not dispute that he did not receive a decision on the merits from the third

2    level of review on his grievance alleging he was subjected to a retaliatory bed move.  (ECF No.

3    42.)  Thus, defendant has met her burden of establishing that the institution provided an

4    administrative remedy and plaintiff did not exhaust as to this claim.  See Albino, 747 F.3d at

5    1172.

6    It is plaintiff's burden "to come forward with evidence showing that there is something in

7    his particular case that made the existing and generally available administrative remedies

8    effectively unavailable to him."  Id.; see also Ross, 578 U.S. at 642-44.

9    Plaintiff argues that grievance log No. 3565 exhausted all of his claims in this action or

10   alternatively that his retaliatory bed move claim was improperly screened out and administrative

11   remedies were unavailable because it would have been impossible for him to exhaust remedies as

12   to all of his claims within the time limits.  (Id. at 1-3.)  The court will address each argument in

13   turn below.

14                                    **A.  Improper Rejection**

15   Plaintiff argues that the rejection of grievance 3565 for raising multiple issues was

16   improper because both the August 4 retaliatory RVR and the August 8 retaliatory bed move

17   stemmed from the same August 4 argument with defendant.  (ECF No. 42 at 2.)

18   A prison inmate in California, during the time relevant to this action, would satisfy the

19   administrative exhaustion requirement by complying with the procedures set forth in §§ 3084.1-

20   3084.8 of Title 15 of the California Code of Regulations.  Those regulations included a provision

21   that stated prison officials could reject grievances that involve "multiple issues that do not derive

22   from a single event, or are not directly related and cannot be reasonably addressed in a single

23   response due to this fact."  Cal. Code Regs., tit. 15, § 3084.6(b)(8).  If a grievance was rejected

24   pursuant to § 3084.6(b), the regulations required that the inmate be given clear and sufficient

25   instructions regarding any further actions necessary to appeal the matter.  Cal. Code Regs., tit. 15,

26   § 3084.6(a)(1).  If the appeal was corrected and returned within the applicable deadline it may

27   later be accepted.  Cal. Code Regs., tit. 15, § 3084.6(a)(2).

28   ////

14

Here, the CDC Form 695 rejecting appeal log No. CHCF-E-19-03565 advised plaintiff that his appeal was being rejected pursuant to Cal. Code Regs. tit. 15, § 3084.6(b)(8) because it "involve[d] multiple issues that do not derive from a single event, or are not directly related and cannot be reasonably addressed in a single response."  (ECF No. 42 at 14.)  Plaintiff was instructed to rewrite the appeal, "being specific to the August 4, 2019 event" and further advised that "all other issues shall be appealed separately."  (Id.)

Prison officials may screen out grievances for raising multiple issues, even when plaintiff claims the allegations raised stem from a single issue.  Rios v. Paramo, No. 14-1073, 2016 WL 4709063, at *5 (S.D. Cal. Sept. 9, 2016) (finding "no evidence that [grievance rejected under § 3084.6(b)(8)] was improperly screened out" where plaintiff argued that "his grievance was based on a single issue—conspiracy"); Cochran v. Aguirre, No. 1:15-cv-1092 AWI SAB (PC), 2017 WL 3149585, at *11-12 (E.D. Cal. July 25, 2017) (finding plaintiff's appeal was "properly rejected as containing multiple issues where plaintiff alleged a number of concerns relating to their status as a transgender inmate).

The court finds that the original version of grievance 3565 containing allegations about defendant's actions on August 4, 2019 and August 8, 2019 was rejected in accordance with applicable regulations.  "Plaintiff's disagreement with the prison's determination that this appeal involved two separate incidents, does not generate a material dispute of fact."  Joyce v. Santoro, No. 1:20-cv-1253 DAD SAB (PC), 2022 WL 2955012 at *10 (E.D. Cal. July 26, 2022). Administrative remedies were not rendered effectively unavailable because the rejection was proper.  Accordingly, plaintiff's claim that defendant retaliated against him by changing his housing assignment on August 8, 2019, was not exhausted by grievance 3565.[7]

### B.  Unavailability

Plaintiff also argues that administrative remedies were unavailable because grievance 4079 was improperly rejected as untimely and time constraints imposed by applicable regulations

---

[7] The undersigned notes that plaintiff resubmitted grievance 3565, omitting allegations related to the August 8 bed move claim, and pursued it through all three levels, exhausting his claim that defendant retaliated by issuing an RVR on August 8, 2019.

1    made it impossible to submit grievances on all issues.  (ECF No. 42 at 2-3.)  Defendants argue

2    that grievance 4079 was properly rejected as untimely.  (ECF No. 26 at 10-11.)

3         The parties agree that plaintiff mentioned the retaliatory bed move allegation in the

4    rejected grievance log number 3565 timely submitted on August 24, 2019.  (ECF No. 26-2 at 38;

5    ECF No. 42 at 8.)  The CDC Form 695 rejecting grievance 3565 for raising multiple issues in one

6    grievance was issued on September 3, 2019.  (ECF No. 26-2 at 28; ECF No. 42 at 14.)  The form

7    further advised plaintiff that he needed to "resubmit within 30 days," but cautioned that he was

8    "subject to the submission of one non-emergency appeal every 14 calendar days."  (Id.)

9         Plaintiff resubmitted grievance 3565 with allegations solely related the August 4 incident

10   on September 13, 2019, and submitted a separate grievance, log number 4079, regarding the

11   retaliatory bed move on September 29, 2019.  (ECF No. 26-2 at 29-32, 46-49, 58.)  Plaintiff noted

12   in the appeal that he was filing a separate grievance as instructed by the rejection of grievance

13   3565.  (Id. at 46.)  Grievance log 4079 was rejected on October 2, 2019, because it involved

14   multiple issues.  (ECF No. 26-2 at 50.)  Plaintiff was instructed to rewrite the appeal with

15   allegations regarding only the August 8 bed move because he already submitted a grievance

16   regarding the August 4 incident.  (Id.)  Plaintiff resubmitted grievance 4079 and it was received

17   by the appeals office on October 7, 2019.  (Id. at 58.)  The appeal was cancelled because the

18   incident happened on August 8 and the appeals office received the grievance on October 1, 2019.

19   (Id. at 58.)

20        Thereafter, plaintiff submitted grievance 4044, challenging the cancellation of grievance

21   4079, on October 19, 2019.  (Id.)  The appeals office rejected the grievance because it alleged

22   multiple issues, specifically incidents that occurred on August 4 and August 8, 2019.  (Id.)

23   Plaintiff resubmitted the appeal and it was accepted at the second level of review on October 31,

24   2019.  (Id.)  The appeal was denied at the second level.  (Id.)  Plaintiff submitted appeal log 4044

25   to the third level of review and received a letter stating the second level response served as the

26   Department's decision.  (ECF No. 26-3 at 12.)

27        Administrative remedies are "effectively unavailable" if plaintiff can show "that he

28   attempted to exhaust administrative remedies but was thwarted."  See Sapp, 623 F.3d at 822-24.

16

1   The Ninth Circuit also requires "a good-faith effort on the part of inmates to exhaust a prison's

2   administrative remedies as a prerequisite to finding remedies effectively unavailable." Albino,

3   697 F.3d at 1035.  Here, plaintiff submitted grievance 4079 regarding the August 8 bed move

4   within thirty days of receiving the rejection which instructed him to file a separate grievance

5   within thirty days.  (ECF No. 26-2 at 43-55; ECF No. 42 at 14.)  The rejection notice further

6   advised plaintiff that he was "still subject to the submission of one non-emergency appeal every

7   14 calendar days."  (ECF No. 26-2 at 28; ECF No. 42 at 14.)

8       Plaintiff resubmitted grievance 3565 on September 17, fourteen days after receiving the

9   rejection notice, and grievance 4079 was received by prison officials fourteen days after that on

10  October 1, 2019.  (ECF No. 26-2 at 29-30, 50-53.)  Additionally, grievance 4079 was received

11  within the thirty-day time limit set forth in the September 3 rejection notice.  However, prison

12  officials determined that grievance 4079 was not timely filed.  (ECF No. 26-2 at 44.)  Plaintiff

13  filed a separate grievance, log number 4044, challenging that determination and pursued that

14  grievance through all three levels of review.  (ECF No. 26-2 at 57-70; ECF No. 26-3 at 12-24.)

15      Defendant argues that plaintiff could have submitted a grievance regarding the August 8

16  retaliatory bed move within thirty days.  (ECF No. 44 at 5.)  However, plaintiff's opposition

17  indicates that he understood the September 3 rejection notice to mean that he had thirty days from

18  the date of receipt of the rejection form to submit a separate grievance.  (ECF No. 42 at 1-3.)

19  Plaintiff should not be penalized for complying with the instructions provided in the rejection

20  form.  Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010) (excusing inmate's failure to

21  exhaust where he "took reasonable and appropriate steps to exhaust" his claim "and was

22  precluded from exhausting, not through his own fault but by the Warden's mistake").

23      Plaintiff attempted to exhaust his claim that defendant retaliated by moving his housing

24  assignment but was thwarted when prison officials cancelled grievance 4079 as untimely.

25  Additionally, plaintiff pursued all available administrative remedies by filing grievance 4044 and

26  presenting it for review at all three levels of review.  The undersigned finds that plaintiff should

27  be excused from failing to comply with the PLRA's exhaustion requirement on his retaliatory bed

28  move claim because prison officials' rejection of grievance 4079 rendered administrative

17

1  remedies effectively unavailable.  <u>See</u> <u>Sapp</u>, 623 F.3d at 823 (improper screen-outs render the

2  exhaustion process unavailable).  Accordingly, defendant's motion for partial summary judgment

3  on plaintiff's retaliatory bed move claim should be denied.

4                                      **CONCLUSION**

5           Accordingly, IT IS HEREBY RECOMMENDED that defendant's motion for partial

6  summary judgment (ECF No. 26) be denied.

7           These findings and recommendations are submitted to the United States District Judge

8  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one (21)

9  days after being served with these findings and recommendations, any party may file written

10 objections with the court and serve a copy on all parties.  Such a document should be captioned

11 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

12 shall be served and filed within fourteen days after service of the objections.  The parties are

13 advised that failure to file objections within the specified time may waive the right to appeal the

14 District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

15 Dated:  August 29, 2023

16

17

18                                      DEBORAH BARNES
                                        UNITED STATES MAGISTRATE JUDGE
19

20

21 DB:12
   DB/DB Prisoner Inbox/Civil Rights/S/tayl1042.msj fr exh

22

23

24

25

26

27

28